IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01378-RM-NYW

PHILLIP NELSON,
individually and on behalf of all others similarly situated,

    Plaintiff,

v.

FEDEX GROUND PACKAGE SYSTEM, INC.
d/b/a FedEx Home Delivery,

    Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Magistrate Judge Nina Y. Wang

This civil action comes before the court on Plaintiff Phillip Nelson's ("Plaintiff" or "Mr. Nelson") Motion for Approval of *Hoffman-LaRoche* [sic] Notice ("the Motion" or "Motion for Conditional Certification") [#18, filed July 30, 2018]. The Motion is before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), the Order Referring Case dated July 16, 2018 [#16], and the Memorandum dated September 24, 2018 [#31]. Defendant FedEx Ground Package System, Inc. ("Defendant" or "FedEx") filed a Response on September 10 [#30], and Plaintiff filed a Reply brief on September 24 [#32]. On December 5, 2018 Plaintiff filed a Notice of Supplemental Authority [#47], directing this court's attention to the decision in a similar case in Massachusetts: *Roy v. FedEx Ground Package System, Inc.*, 3:17-cv-30116-KAR, 2018 WL 6179504 (D. Mass. Nov. 27, 2018). The Parties then engaged in further briefing regarding application of *Roy*. [#51; #53]. The Motion is now fully briefed and ready for decision. The court has carefully considered the Motion and related briefing, the entire case file,

and the applicable case law. For the following reasons, it is respectfully **RECOMMENDED** that the Motion for Conditional Certification be **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff Phillip Nelson filed this action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, (the "FLSA"); the Colorado Wage Claim Act, § 8-4-101, *et seq*; and the Colorado Minimum Wage Act, C.R.S. § 8-6-101, *et seq.*, as implemented by the Colorado Minimum Wage Order, on June 5, 2018. [#1]. Plaintiff is a delivery driver who worked for Harmony Express, Inc. ("Harmony Express"), an independent service provider ("ISP")[2] in the broader FedEx distribution network that makes deliveries to individual recipients, i.e., the final phase of a package's shipment. [*Id.* at ¶ 2, 7].[3] FedEx's business model relies on the use of ISPs, who in turn hire drivers like Plaintiff, to deliver packages to customers, and to this end FedEx utilizes standardized operating agreements with ISPs. [*Id.* at ¶¶ 7–8].

The relationship between FedEx and an ISP is deep and comprehensive, with the former

---

[1] Because the issue at this stage is whether Plaintiff has made "substantial allegations" supporting conditional certification, these facts are taken from the operative complaint [#1], the Motion for Approval of *Hoffman-LaRoche* [sic] Notice [#18], and associated affidavits. Defendant's counter-assertions of fact as attached to the Response are not properly before the court at this stage, although those allegations may be proper to consider at a later stage of this proceeding. *See Hose v. Henry Indus., Inc.*, 49 F. Supp. 3d 906, 908–09 (D. Kan. 2014) (disregarding Defendant's substantive challenges to factual allegations).

[2] Independent Service Provider is the current terminology; prior to June 10, 2017, these entities were known as "Contracted Service Providers" ("CSP"). [#30 at 8]. The distinction is not relevant for purposes of this Recommendation, and so the court uses the current ISP terminology for simplicity and consistency.

[3] Plaintiff asserts that he is a "joint employee" of both Harmony Express and FedEx, but because status as an FLSA joint employer is either a mixed question of fact and law, *Zheng v. Liberty Apparel Co. Inc.*, 617 F.3d 182, 185 (2d Cir. 2010), or a question of law, *Torres-Lopez v. May*, 111 F.3d 633, 638 (9th Cir. 1997), the court may not accept the legal conclusion that FedEx operated as a joint employer with Harmony Express at this stage. *See Ward v. Express Messenger Sys., Inc.*, No. 17-cv-02005-NYW, 2018 WL 1604622, at *5 (D. Colo. 2018) (deferring resolution of the joint employer question to the decertification stage).

directing nearly every operational detail of the latter's business. [*Id.* at ¶¶ 8–37]. Although nominally employees of the ISP, Plaintiff and other such employees had nearly every detail of their working life dictated by FedEx, including hiring and firing standards, training protocols, employee uniforms and signage for the vehicles, delivery schedules, and pickup windows. [*Id.*]. Plaintiff and other ISP employees carried electronic scanners owned directly by FedEx that they used to scan the packages and log them into FedEx's network. [*Id.* at ¶ 18]. In addition to giving weekly safety briefings, FedEx managers conduct periodic "ride-alongs" to review driver performance and ensure FedEx protocols are followed. [*Id.* at ¶¶ 21–22]. While the court does not accept that this constitutes a co-employer or joint venture relationship as Plaintiff maintains [*id.* at ¶¶ 2, 7], the factual allegations establish a close working relationship where FedEx dictates most if not all relevant practices by the ISPs and drivers like Mr. Nelson. FedEx is the only client of, and exclusive source of income for, Harmony Express. [*Id.* at ¶ 10]

In the course of performing this work for Harmony Express, Plaintiff was not paid for hours he worked in excess of forty per week or twelve per day. [*Id.* at ¶ 36]. This non-payment forms the basis of this litigation and the putative collective class. Plaintiff has provided declarations from other ISP drivers (and putative opt-in Plaintiffs) to support this contention and in support of the instant Motion.

Declarant Shad Newton has worked for over ten different ISPs in his professional career and states that "the pay formula is the same for drivers" and is "basically universal" from his experience. [4] [#18-1 at ¶¶ 3, 4]. Mr. Newton states that drivers in Colorado are subject to the

---

[4] The relevance of Mr. Newton's declaration is unclear as he does not clarify if he worked in Colorado during the putative collective-action period, but the court accepts his statements as at least minimally probative at this juncture. Plaintiff seeks only collective certification as to Colorado drivers, all statements or assertions made regarding events or practices outside of this state, and all references to litigation outside this District [#32 at 2 n.3], are disregarded.

same overtime and employment scheme that fails to compensate them for overtime hours. [*Id.* at ¶¶ 11–12]. Declarant Nick Parks makes a similar declaration, alleging that he works at an unnamed ISP in Fort Collins, Colorado and has not been paid an overtime rate despite working overtime hours. [#18-2 at ¶¶ 2, 9]. Declarant Edward Lopez states that he worked in an unspecified Colorado terminal—presumably for another ISP that may or may not be the same as Mr. Parks's ISP—and he was never paid overtime. [#18-3 at ¶¶ 3, 9]. Mr. Lopez states that he "had discussions with many drivers over the course of [his] tenure with FedEx, and without exception, [he] never encountered a driver that received an overtime rate." [*Id.* at ¶ 10].

On July 30, 2018 Plaintiff filed this Motion for Approval of *Hoffman-LaRoche* [sic] Notice [#18] with the attached affidavits discussed above. Plaintiff seeks conditional collective action certification for "[a]ll current or former Colorado FedEx drivers from June 5, 2015 to present." [*Id.* at 4]. Defendant opposes this Motion.

Defendant argues that conditional certification is not warranted at this stage because, however light the burden, Plaintiff has failed to make substantial allegations that the putative class was subject to a single policy, decision, or plan that resulted in the harm, and additionally the putative class is not similarly situated. *See generally* [#30]. Defendant argues that Plaintiff has failed to demonstrate that the putative class is similarly situated because there are scores of ISPs in the State of Colorado and Plaintiff does not make substantial allegations that all drivers working for these independent entities are subject to a commonly applicable compensation policy. [*Id.* at 10–11].

Defendant contends that nowhere in the Motion for Conditional Certification does Plaintiff make an allegation that he and others were subject to a single policy, decision, or plan that resulted in the harm at issue, i.e., the lack of overtime. [*Id.* at 11] ("The complaint, in fact,

4

contains *no* allegations regarding any commonly applicable compensation policy." (emphasis in original)). Instead, Plaintiff's and affiants' numerous allegations pertain to the extent of control FedEx exerts over ISPs, without alleging facts to establish that a single policy or decision of FedEx resulted in any sort of commonly applicable pay structure. [*Id.* at 11–12]. leaving the factfinder to connect the dots and assume that ISPs who failed to pay overtime to their drivers did so as the result of this control, and further that this control may be characterized as a single decision, policy, or plan. [*Id.* at 12–13]. But FedEx maintains separate contracts with each of the many ISPs in its network, and thus the pay structure available to the drivers "is not the result of a *single* decision, policy, or plan, but of the many separate decisions, policies, or plans made and implemented by individual ISPs." [*Id.*] (emphasis in original).

Defendant further objects to conditional certification on the basis that the FLSA overtime requirements will not apply to all ISP drivers, as at last some drivers qualify for exemptions from overtime requirements under Motor Carrier Act ("MCA") exemptions. Defendant paints a complex legal and factual landscape, arguing that the MCA will exempt those Plaintiffs who work for "motor carriers" under the MCA and those whose work duties directly affect the safety of vehicles in interstate commerce. [*Id.* at 14]. These exceptions are themselves subject to exceptions if the employee drives a light or heavy vehicle. [*Id.*]. Concluding whether a driver is entitled to overtime payment under the FLSA is a difficult, fact-specific exercise that may be subject to any number of potential defenses or legal caveats.

**LEGAL STANDARD**

The FLSA governs the payment of minimum wages and overtime compensation between an employer and its employees. *See* 29 U.S.C. §§ 206–207. Under the statute, a covered employer must pay its employees for the time that it employs them; and the FLSA generally

requires covered employers to compensate employees for work in excess of forty hours in a work week. *See* 29 U.S.C. §§ 206(a), 207(a). The required overtime compensation is one and one-half times an employee's "regular rate" of pay. 29 U.S.C. § 207(e). The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The FLSA "defines the verb 'employ' expansively to mean 'suffer or permit to work.'" *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 326 (1992) (quoting 29 U.S.C. § 203(g)).

In the FLSA, § 216(b) authorizes private individuals to recover damages for violations of minimum wage and overtime provisions. It provides that "[a]n action to recover the liability [for unpaid overtime compensation, retaliation and liquidated damages] may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The FLSA thus provides plaintiffs the opportunity to proceed collectively, which allows "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (interpreting the ADEA, which explicitly incorporates the collective action provisions of the FLSA). Plaintiffs who wish to participate in an FLSA collective action must opt in to the action. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); *see also In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*, 638 F. Supp. 2d 1290, 1298 (D. Colo. 2009).

In *Thiessen v. General Electric Capital Corp.*, the United States Court of Appeals for the Tenth Circuit ("the Tenth Circuit") approved a two-step process for determining whether

6

putative class members are similarly situated to the named plaintiff. 267 F.3d 1095, 1105 (10th Cir. 2001). Pursuant to this approach, the trial court determines at the initial "notice stage" whether the plaintiff has asserted "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* at 1102. The court may rely on the allegations of the complaint and any supporting affidavits filed by the plaintiff. *Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676, 680 (D. Kan. 2004); *see also Smith v. Pizza Hut, Inc.*, No. 09-cv-01632-CMA-BNB, 2012 WL 1414325 (D. Colo. Apr. 21, 2012). A court may not "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Ward v. Express Messenger Sys., Inc.*, No. 17-CV-02005-NYW, 2018 WL 1604622, at *3 (D. Colo. Apr. 3, 2018).

Plaintiffs bear the burden of establishing that they are similarly situated. *Eagle v. Freeport-McMoran, Inc.*, No. 2:15-CV-00577-MV-SMV, 2016 WL 7494278, at *2 (D.N.M. 2016) (citing *Montoya v. Rescue Indus., Inc.*, No. 98-1269, 1999 WL 240247, at *1 (10th Cir. 1999) (citation omitted)). But the "similarly situated" requirement under § 216(b) is not intended to be an onerous standard. *See, e.g., Gordineer v. Rocky Mountain Offender Mgmt. Sys., No.* 12 Civ. 1212, 2013 WL 179327, at *3 (D. Colo. 2013). The standard "typically results in class certification." *Brown*, 222 F.R.D. at 679. Nonetheless, courts deny conditional certification in instances where the complaint is wholly conclusory in nature, the supporting affidavit relies on hearsay from unidentified sources, and the nature of the violation is rendered ambiguous by the particular circumstances of the named plaintiff(s). *See Saarela v. Union Colony Protective Servs., Inc.*, No. 13-cv-01637-MSK-MJW, 2014 WL 3408771 (D. Colo. 2014) (dismissing motion for conditional certification without prejudice and instructing the plaintiff he could renew his request upon a more substantial showing that the defendant company's alleged

7

failure to pay overtime to plaintiff was indicative of a policy that applied equally to other similarly-situated employees); *see also Eagle*, 2016 WL 7494278, at *2 ("Conditional certification in the notice stage . . . is by no means automatic."). Numerous courts in this District have followed this *ad hoc* approach in determining whether plaintiffs can move forward collectively under the FLSA. *See, e.g., Baldozier v. American Family Mut. Ins. Co.,* 375 F. Supp. 2d 1089, 1092 (D. Colo. 2005).

Recently, a court in this District considered whether the *ad hoc* approach drawn from the Rule 23 certification process is the proper framework by which to consider plaintiffs' requests to proceed collectively. *See Turner v. Chipotle Mexican Grill, Inc.,* 123 F. Supp. 3d, 1300, 1309 (D. Colo. 2015). In *Turner*, the court considered as a threshold issue the "proper procedural mechanism for pursuing a representative action 'on behalf of' employees similarly situated." *Id.* at 1305. Based on its reading of the FLSA and historical jurisprudence, the *Turner* court rejected the two-stage process in favor of allowing "workers [who] bring[] the same statutory claim against the same employer to join as a collective, with the understanding that individuals may be challenged and severed from the collective if the basis for their joinder proves erroneous."[5] *Id.* at 1309. The *Turner* court acknowledged that some opt-in claimants could render a collective action too difficult to administer, but nonetheless placed the onus on the defendant to dismiss any such plaintiffs through misjoinder under Rule 21 or severance under Rule 42. *Id.* Another court in this District has since concurred with the approach taken in *Turner*. *See Oldershaw v. DaVita*

*Healthcare Partners, Inc.*, 255 F. Supp. 3d 1110, 1114 (D. Colo. 2017). In denying mandamus in *Turner*, the Tenth Circuit observed that although it had opined in *Thiessen* that the *ad hoc* approach was "arguably the best" of the three approaches examined therein, there was "little difference in the various approaches," because each one allows "for consideration of the same or similar factors, and generally provide[s] a district court with discretion to deny certification for trial management reasons." *In re Chipotle Grill, Inc.*, Case No. 17-1028, 2017 WL 4054144, *5 (10th Cir. Mar. 27, 2017) (unpublished). Though there is some discussion of these later cases, Plaintiff hews to the two-stage *ad hoc* approach in his arguments. [#18 at 5–6].

The Tenth Circuit has cautioned courts to avoid focusing on merits of the underlying class action in making class certification decisions. *Adamson v. Bowen,* 855 F.2d 668, 676 (10th Cir. 1988). If Plaintiff's allegations establishing the "similarly situated" nature of their claims are rebuttable on the merits, that is typically an issue for a later stage of the process. *Lindsay v. Cutters Wireline Serv., Inc.*, No. 17-cv-01445-PAB-KLM, 2018 WL 4075877, at *1 (D. Colo. 2018).

---

[5] The *Turner* court adopted and applied something akin to what the Tenth Circuit in *Thiessen* labeled the "spurious approach," for assessing whether plaintiffs were similarly situated. On review of a petition for writ of mandamus following the District Court's decision, the Tenth Circuit determined that the spurious approach applied in *Turner* was not such a gross abuse of discretion as to warrant mandamus relief, but specified that it was not rendering a definitive conclusion on the merits of the approach for the purpose of analyzing "similarly situated." *In re Chipotle Grill, Inc.*, Case No. 17-1028 (Mar. 27, 2017). *See also Sanchez v. Simply Right, Inc.*, No. 15–cv–00974–RM–MEH, 2017 WL 2230079, at *4 (D. Colo. May 22, 2017).

# ANALYSIS

## I.  Substantial Allegations

There is no dispute that FedEx and its ISPs, including Plaintiff's employer, Harmony Express, are distinct corporate entities. And neither Plaintiff nor the other declarants allege specific facts to allow for a conclusion that Defendant expressly promulgated and bound its ISPs to a single action, policy, or plan to affect a universal pay structure applicable to Plaintiff and other drivers. Instead, Plaintiff has provided substantial allegations establishing that FedEx and the ISPs worked closely in managing the drivers and most if not all operational details of the ISPs' businesses and that the drivers were not paid overtime but rather are compensated by a flat daily rate. *See generally* [#1; #18-1; #18-2; #18-3]. In his Reply to the Motion for Conditional Certification, Plaintiff makes his position clear—to accept that he has made substantial allegations of a single action, policy, or plan affecting Plaintiff's overtime pay (or lack thereof), the court must make its own logical inference on his behalf, i.e., the amount of control FedEx exerts over its ISPs necessarily means that it dictates the ISPs' pay structure and decisions. [#32 at 3] ("The idea that a company as large and sophisticated as Fed[E]x would have such a *laissez-faire* attitude as to how its service is provided defies logic and common-sense."). Thus, the fundamental question posed to the court is whether the substantial allegations establishing the Defendant's far-reaching operational control and management over nominally independent third-party employers permits an inference of a "single decision, policy, or plan" affecting third-party employee compensation such that collective certification is warranted.

Neither the Plaintiff nor the court's independent research has identified an analogous situation that resulted in certification absent allegations establishing the defendant's participation in plaintiffs' compensation decisions, policies, or plans. For the following reasons, the court

finds that Plaintiff's allegations are inadequate because the "substantial allegation" requirement established in *Thiessen* is fundamentally incompatible with, and therefore cannot be met by, an inference akin to the type afforded Plaintiffs at the Rule 12(b)(6) stage.

***Cases Addressing the Control/Compensation Nexus.*** This court recently addressed a similar situation in *Ward v. Express Messenger Systems*, where Plaintiffs worked for nominally distinct third-party delivery companies that were extensively controlled by the Defendant. *Ward*, 2018 WL 1604622, at *5. In that case, this court found that Plaintiffs did offer substantial allegations of a single decision, policy, or plan regarding employee compensation given the extensive operational control Defendants exercised over Plaintiffs' work for the third parties. *Id.* at *5–6. But critically, Defendants in that case were alleged to have exercised direct control over employee pay—making deductions from employee paychecks for improper deliveries and deducting the cost of the scanning device provided to the delivery drivers. *Id.* Further, the Plaintiff in that case joined both the third-party delivery company and the allegedly controlling corporation. *See generally id.* at *1. In this case, Plaintiff makes no such allegation that FedEx exercised such direct control over employee pay, and neither Harmony Express nor any other ISP is joined as a defendant. Therefore, this court's prior decision in *Ward* is distinguishable.

Other courts reviewing similar situations have looked to Defendant's personal participation in compensation or working hours, either directly or indirectly. For example, in *Nicks v. Koch Meat Co.*, 265 F. Supp. 3d 841, 841 (N.D. Ill. 2017), Plaintiffs worked for a third-party staffing company on Defendants' farms. While the third-party paid the Plaintiffs, the lack of overtime pay was effectively dictated by the Defendants because the Defendants "largely control[led] the rate and method of payment to Plaintiffs at each of the Complexes by paying the staffing companies on a piece rate basis with such thin margins that it [was] impossible for the

11

companies to pay overtime and minimum wage." *Id.* at 847. The *Nicks* court held this was sufficient because Plaintiff provided evidence that Defendants' actions "dictated the third-party contractors' abilities to pay chicken-catchers for overtime work." *Id.* at 853. Other courts have come to similar conclusions upon a showing that the Defendant had some sort of active participation in the third-party employer's overtime or compensation policy. *See, e.g.*, *Bowser v. Empyrean Servs., LLC*, 324 F.R.D. 346, 348–49 (W.D. Pa. 2018) (Defendant approved and had authority to alter employees' reported time); *Jackson v. Fed. Nat'l Mortg. Ass'n*, 181 F. Supp. 3d 1044, 1057 (N.D. Ga. 2016) (Defendant both encouraged working overtime and prohibited reporting overtime for employees of third-party staffing agency).

***Inferences Absent Adequate Basis.*** A plaintiff is obliged to make substantial allegations and courts have refrained from inferring such allegations on Plaintiff's behalf. These sorts of disagreements usually arise in the context of geographic scope of the putative collective action; courts do sometimes make inferences on a Plaintiff's behalf but only as to the *extent* of an alleged violation, not as to the *presence* of Defendant's participation therein. In *Avendano v. Averus, Inc.*, No. 14-CV-01614-CMA-MJW, 2015 WL 1529354, at *7 (D. Colo. Mar. 31, 2015), the court evaluated Plaintiff's allegations regarding a national policy from evidence relevant only to the local Denver office. Plaintiff alleged that others outside Denver must have had similar duties and compensation because the jobs were advertised in the same manner as his own, but the court rejected this inference. *Id.* at *7. To accept that as a substantial allegation of a national practice, "the Court would have to improperly *assume* that employees in other locations" were subject to the same FLSA violations; this was improper because "Plaintiff has presented no allegations or evidence from which Court could infer that employees in Defendants' other branches were also not paid overtime." *Id.* (emphasis in original); *see also Braun v. Superior*

*Indus. Int'l, Inc.*, No. 09-2560-JWL, 2010 WL 3879498, at *6 (D. Kan. Sept. 28, 2010) ("[T]here are no allegations or evidence from which the court could infer that employees in those [other] facilities are required to perform pre-and post-shift work.").

In cases where courts have made such inferences, the plaintiff has provided far more detailed and well-supported allegations or has provided evidence that the defendant has treated the intermediary employers the same, i.e., that the defendant reliably uses the same form operating agreement. In *Barnwell v. Corrections Corp. of America*, No. 08-2151-JWL, 2008 WL 5157476, at *3–5 (D. Kan. Dec. 9, 2008), the plaintiff offered sworn statements from nearly *two hundred* potential plaintiffs, more than rebutting the defendant's claim that Plaintiff did not offer substantial allegations of a single policy, decision, or plan. In *Hose v. Henry Industries, Inc.*, 49 F. Supp. 3d 906, 918 (D. Kan. 2014), the defendant used third-party intermediaries just as FedEx does. Conditional certification as to drivers working for those third-parties was proper because "plaintiff makes precisely such allegations of a company-wide, uniform policy," including that "[defendant] maintains a uniform method for compensating drivers." *Id.* at 910, 918. Indeed, the plaintiff alleged that the prospective plaintiffs were "employed pursuant to a standard form Cartage Agreement." *Id.* at 918. "All of the evidence presented to the court from both sides indicates that the decision to treat drivers as independent contractors is a company-wide policy." *Id.* 918–19. The *Hose* plaintiff thus provided both an allegation that the defendant treated the intermediaries the same through the use of the same standard operating agreement, *and* linked that to a common practice of employee compensation by providing substantial allegations of a uniform compensation policy.

Here, Plaintiff has not alleged that the FedEx-ISP relationship is uniform and controlling of the latter's compensation policies—only that FedEx uses "standardized agreement[s]" and

was the only client of Harmony Express. During the Telephonic Discovery Conference held on November 13, 2018, Defendant represented that all contracts between FedEx and the ISPs had been produced. [#44]. Yet the Motion for Conditional Certification points to no contractual provision in those contracts that demonstrates that FedEx has a direct role in the compensation decisions, policies, or plans of its ISPs, leaving no factual basis—rather than speculation—allowing this court to conclude that FedEx dictates the compensation scheme of their ISPs, even if it is consistent across those ISPs. And Plaintiff's evidence that Colorado drivers in the collective-action period were treated the same is insufficient for other reasons as described below.

**Roy v. FedEx *is Distinguishable*.** Plaintiff has provided this court with a copy of the decision in *Roy v. FedEx Ground Package System, Inc.*, 3:17-cv-30116-KAR, 2018 WL 6179504 (D. Mass. November 27, 2018), where a court in the United States District Court for the District of Massachusetts granted first-stage conditional certification as to all FedEx ISP drivers in Massachusetts. *Id.* at *17. With due respect to the comprehensive and well-reasoned decision in that case, the court is not persuaded that *Roy* should guide this court in resolving the present issue in Colorado.

The most significant distinction to be drawn between this case and *Roy* is that the latter is subject to a different standard for conditional certification. At the first stage of conditional collective action certification, the United States Court of Appeals for the First Circuit ("First Circuit") requires a plaintiff to show only a "reasonable basis" to believe that the putative opt-in Plaintiffs are similarly situated. *Id.* at *12; *see also Johnson v. VCG Holding Corp.*, 802 F. Supp. 2d 227, 234 (D. Me. 2011). In addition, when evaluating whether the putative plaintiffs are similarly situated, courts in the First Circuit require a "modest factual showing"—as opposed

to "substantial allegation(s)"—that they were the victim of a *common* unlawful policy or plan, not a *single* policy or plan as applies in this Circuit. *Compare Roy*, 2018 WL 6179504, at *13 ("[T]he plaintiff must make a modest factual showing that he or she and other employees, with similar but not necessarily identical jobs, suffered from a common unlawful policy or plan." (citations, quotations, and alterations omitted)); *Johnson*, 802 F. Supp. 2d at 234 (same); *Lichy v. Centerline Commc'ns LLC*, No. 15-CV-13339-ADB, 2018 WL 1524534, at *3 (D. Mass. Mar. 28, 2018) (same), *with Thiessen*, 267 F.3d at 1102 (In [first-stage conditional certification], a court requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." (citations, quotations, and alterations omitted)).

In addition, it appears the *Roy* court had a more complete record and more substantial factual allegations to rely upon than in the present case. Unlike the present case, the plaintiff in *Roy* provided numerous SEC filings to further elaborate on the FedEx-ISP relationship and its uniformity, identified the terminal he worked at with specificity, and his references to "many" drivers were clearly inside the putative collective class whereas here, declarants speak generally as to their experience in and out of the collective class. *Roy*, 2018 WL 6179504, at *15. The *Roy* court also accepted the Plaintiffs' "joint employer" argument, which this court declines to do at this stage. *Id.* at *14 (finding that there is a reasonable basis to infer a joint employer relationship between FedEx and the ISPs). The lower burden applied in *Roy* and a better-developed record whose allegations are clearly all relevant to the putative collective action is a sufficient basis to distinguish the present case.

***The Present Case.*** While Plaintiff does allege that FedEx exercises substantial control over the day-to-day operations of the ISPs, he does not allege FedEx's role in ISP compensation

15

actions, policies or plans, i.e., the putative FLSA violation.[6] He alleges neither FedEx's *de jure* nor *de facto* control over employee compensation as in *Nicks*; he does not allege that the FedEx is the only employer or is substantially the only source of revenue for the ISPs (apart from his own) such that ISP-FedEx compensation and performance expectations effectively precluded Colorado ISPs from paying overtime; the allegation that FedEx was the only client of his ISP—Harmony Express—is not sufficient to the size of the class Plaintiff seeks to certify. Mr. Newton, Mr. Parks, and Mr. Lopez all fail to identify the specific periods of time in which they worked for Colorado ISPs, or which ISPs were their respective employers. Indeed, it is entirely unclear whether Mr. Newton or Mr. Lopez worked in Colorado for a FedEx ISP during a period covered by the applicable statute of limitations. Neither Plaintiff nor any of the declarants allege that FedEx exercised direct control over their respective paychecks as in *Ward*.

Mr. Newton claims to have worked for ten different ISPs with the same compensation policy, but he does not identify how many of those ISPs are in Colorado—i.e., relevant to the present motion—nor does Mr. Newton identify if he worked for any Colorado ISP in the relevant time-period. [#18-1 at 2]. Further, Mr. Newton worked for both ISPs and FedEx directly, and his references to "FedEx drivers" do not seem to distinguish between those directly employed by FedEx—irrelevant here—and those employed by ISPs—relevant here, but again only if in Colorado and at the relevant time. [*Id.* at 3–4]. Mr. Parks works for only one unnamed ISP in Fort Collins, and so his experience, while relevant, does not itself amount to a substantial allegation. [#18-2]. Finally, Mr. Lopez worked in both Colorado and Florida, but his relevant

---

[6] Mr. Newton's affidavit does indicate that, in his experience, FedEx is an ISP's "exclusive" source of income, but for the reasons discussed below, the court is unable to determine how much of Mr. Newton's experience is relevant to Colorado and the collective action Plaintiff seeks to certify. [#18-1 at 3].

experience in Colorado was at Fort Collins as well, and because neither Mr. Parks nor Mr. Lopez identify the ISP, the court is left to presume both individuals worked for the same ISP given that Plaintiff indicates ISPs are assigned geographically and it would make little sense to have overlap. [#1 at ¶ 7]. Mr. Lopez further states that other unnamed drivers who worked at terminals in Florida and Colorado were not paid overtime, but these general statements regarding putative in- and out-of-class Plaintiffs do not allow this court to conclude that FedEx, the only defendant to this action, is responsible for the alleged policy and/or practice of only paying a flat daily rate without any overtime despite the fact that drivers are working above 40 hours per week. At this early stage, the declarations could be sufficient to establish Plaintiff's entitlement to conditional certification, but only if their relevance to the collective was adequately established. Here, the declarations are simply insufficient to set forth substantial allegations of a single decision, policy, or plan affecting Plaintiff's pay that was specifically undertaken by FedEx. Plaintiff has failed to carry his burden, while admittedly light, at this first stage, and this court declines to make assumptions to fill the interstices of Plaintiff's Motion and supporting declarations.

## II.     Applicable Defenses under MCA

FedEx also argues that certification is not warranted because Plaintiff and the putative collective class are not similarly situated. [#30 at 18]. According to FedEx, Plaintiff and the putative collective class are subject to too many individualized defenses to be considered similarly situated because the FLSA, through the Motor Carrier Act, is subject to numerous exemptions and conditions based on the vehicle driven. [*Id.* at 14–15, 18–20].

Such concerns are not relevant at this stage and must be deferred for the second stage. The law in this Circuit is clear that the "disparate factual and employment settings of the

individual plaintiffs" is reserved for the second, decertification stage after the conclusion of discovery. *Thiessen*, 267 F.3d at 1102–03; *Boldozier v. Am. Family Mut. Ins. Co.*, 375 F. Supp. 2d 1089, 1092 (D. Colo. 2005). At the first, initial certification stage of a collective action, the "similarly situated" inquiry is a question of whether the plaintiffs are similarly situated to each other in suffering the same harm, and inquiring which defenses may apply if Plaintiffs did suffer the same harm is not appropriate at this stage. *See Daugherty v. Encana Oil & Gas (USA), Inc.*, 838 F. Supp. 2d 1127, 1132 (D. Colo. 2011).

### III. Notice

The parties disagree as to the form and contents of the proposed notice to putative opt-in plaintiffs, and have resolved some, but not all, of those disagreements in the course of litigating the Motion for Conditional Certification. *See* [#18-5; #30 at 23–25; #32 at 6–9]. Given this Recommendation, the court declines to address the form and contents of the proposed notice. If the presiding judge, the Honorable Raymond P. Moore, grants Plaintiff's Motion for Conditional Certification in whole or in part, then the court will convene a status conference to discuss the proposed notice if such matter is referred by Judge Moore.

## CONCLUSION

For the forgoing reasons, this court respectfully **RECOMMENDS** that:

(1) Plaintiff Phillip Nelson's Motion for Approval of *Hoffman-LaRoche* [sic] Notice [#18] be **DENIED**.[7]

DATED: December 21, 2018

BY THE COURT:

Nina Y. Wang
United States Magistrate Judge

---

[7] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).